IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARY E. ALLEN,
          Plaintiff,

v.                                           Civil Action No. 3:15-cv-219-JAG

UNUM LIFE INSURANCE COMPANY
OF AMERICA,
          Defendant.

## OPINION

Unum Life Insurance Company of America ("Unum"), the plan administrator for an employee benefit plan in which Mary Allen participated, denied Allen long-term disability benefits. Allen alleges that, in the denial process, Unum defamed her in letters to her doctor and lawyer. Allen filed this action in federal court, alleging two counts under the Employee Retirement Income Security Act of 1974 ("ERISA") and one count of defamation. Unum now seeks to dismiss the defamation claim as preempted by ERISA or, in the alternative, for failure to state a claim. Because ERISA's conflict preemption doctrine reaches state law claims that relate to an employee benefit plan, and because state law claims that arise in the course of processing a benefit claim fall within this category, the Court GRANTS Unum's Partial Motion to Dismiss.

## I. BACKGROUND

Allen works at CVS Pharmacy[1] as a pharmacy technician. As a part of her employment, she participates in an employee benefit plan (the "Plan"). Unum administers the Plan, which includes short- and long-term disability benefits.

---

[1] Allen originally brought her complaint against Unum and CVS Caremark Corporation Welfare Benefits Plan. Allen voluntarily dismissed her claims against the latter by Order dated August 5, 2015. (Dk. No. 26.)

In 2010, Allen sustained multiple injuries in a car accident, including serious back, neck, and leg injuries. Despite undergoing spinal fusion surgery in 2012, Allen allegedly continued to experience pain, forcing her to work part-time. Allen received short-term disability benefits through the Plan, then partial long-term disability benefits. Under the Plan, after receiving long-term disability benefits for 24 months, the definition of "disability" changes. Accordingly, as the expiration of the 24-month period approached, Unum conducted a review of Allen's eligibility for continued benefits.

During its review, on June 13, 2014, Unum sent a letter to Allen's primary care physician "to gain a better understanding of [the doctor's] medical opinion and discuss questions [Unum] has regarding [its] interpretation of the available medical data." (Dk. No. 1-7.) That letter included the following sentence: "Inconsistencies were noted on this call between Ms. Allen's report that she had difficulty with sitting, and her report that she sits in a kitchen chair to perform a number of household chores, including unloading dishes from dishwasher and folding her laundry."

Ultimately, Unum denied Allen's claim for continued long-term disability benefits after the expiration of the initial 24-month period. Unum also denied Allen's appeal. Allen then sent additional information to Unum. After its review, on January 9, 2015, Unum sent a letter to Allen's attorney explaining that the additional information did not change its prior decision. (Dk. No. 1-15.) In this letter, Unum noted certain inconsistencies on which it based its denial decision. Among others, these inconsistencies included discrepancies between statements Allen made about her weight fluctuation in comparison to the doctors' reports, and a Facebook post from a different "Mary Allen" talking about going on a cruise.

Allen sued Unum in federal court alleging three counts: (I) seeking to enforce and clarify right to benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (II) requesting full and fair review under ERISA or, in the alternative, remand to Unum; and (III) seeking damages for defamation. Allen bases her defamation claim on statements made in (1) Unum's June 13, 2014 letter to her doctor and (2) Unum's January 9, 2015 letter to her attorney. Unum moved the Court to dismiss Count III.

## II. DISCUSSION[2]

Unum moves the Court to dismiss Allen's defamation claim as preempted under ERISA.[3] Congress enacted ERISA to protect the interests of participants in employee benefit plans by providing a "uniform regulatory regime over [such] plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To accomplish its purpose, ERISA "include[d] expansive pre-emption provisions . . . to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). The Fourth Circuit "ha[s] been clear that 'ERISA preempts state law, including state common law.'" *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 447 (4th Cir. 2015) (citing *Phx. Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 563 (4th Cir. 1994)).

---

[2] Unum filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim, or judging the applicability of any defenses raised by the non-moving party. *Republican Party of N.C. v. Martin*, 960 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] Alternatively, Unum moves the Court to dismiss Allen's defamation claim for failure to state a claim. Because the Court holds that ERISA preempts Allen's defamation claim, the Court does not reach the merits of the parties' arguments on whether Allen stated a claim for defamation.

Two types of preemption exist under ERISA: (1) complete preemption under § 502 of ERISA, 29 U.S.C. § 1132; and (2) conflict preemption under § 514 of ERISA, 29 U.S.C. § 1144(a).

### A. Complete Preemption Does Not Apply in this Case

Complete preemption does not apply in this case because Allen sued Unum in federal court. The complete preemption doctrine arises under § 502 of ERISA. Section 502(a) presents an "integrated enforcement mechanism" for employee benefit plans, representing "careful balancing" of policy choices by Congress. *Davila*, 542 U.S. at 208–09 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). As it concerns preemption, § 502(a) "is one of those provisions with such 'extraordinary preemptive power' that it 'coverts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 209 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)).

In other words, complete preemption is "properly understood as a jurisdictional doctrine" which "gives rise to removal jurisdiction." *Moon v. BMX Technologies, Inc.*, 498 F. App'x 268, 272 (4th Cir. 2012) (per curium); *see Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002) ("[T]he doctrine of complete preemption serves as a corollary to the well-pleaded complaint rule."). As such, when a state law claim falls within the scope of § 502(a)—such as claims "to, among other things, recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits, and enjoin violations of ERISA"—"the state law claim is converted into a federal cause of action removable to federal court." *Marks v. Watters*, 322 F.3d 316, 323 (4th Cir. 2003). By logical extension, a court does not need to evaluate a state law claim brought in federal court under complete preemption, as the issue of removal does not apply. *See, e.g., In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1355 (S.D. Fla. 2009) (footnote omitted) ("As no jurisdictional implications exist [in this action brought in

4

federal court], we need not address whether [the] state law claims . . . are subject to complete preemption under Section 502(a).").

In this case, Allen sued Unum in federal court, alleging federal question jurisdiction as to her two ERISA claims, and diversity jurisdiction as to her defamation claim.[4] As a result, the removability of Allen's defamation from state court—and, thus, the doctrine of complete preemption—does not present itself in this case. Accordingly, the Court leaves the parties' expansive briefing on the prongs of *Davila* and the applicability of *Sonoco Products Co. v. Physicians Health Plan Inc.*, 338 F.3d 366 (4th Cir. 2003), for a future case.[5]

### B. ERISA Preempts Allen's Defamation Claim Under Conflict Preemption Doctrine

In contrast to complete preemption, the doctrine of conflict preemption *does* apply in this case and serves to preempt Allen's defamation claim. Unlike complete preemption, which operates as a jurisdictional doctrine, *see supra*, conflict preemption "is asserted as 'a federal defense to the plaintiff's suit.'" *Darcangelo*, 292 F.3d at 186–87 (quoting *Metropolitan Life Ins.*, 481 U.S. at 63). The conflict preemption doctrine arises under § 514 of ERISA. Section 514 dictates that ERISA preempts state laws that "relate to" any employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a); *see also Darcangelo*, 292 F.3d at 187.

Congress's intent in passing ERISA provides guidance for courts to determine which state laws "relate to" an ERISA plan. As recognized by the Supreme Court and the Fourth Circuit,

---

[4] Neither this Court nor Unum challenge the propriety of this Court's subject matter jurisdiction.
[5] In her Notice of Newly Decided Authority, (Dk. No. 29), Allen brings a recent decision by the Eastern District of California to the Court's attention. *Rose v. Healthcomp, Inc.*, No. 1:15-cv-00619-SAB, 2015 U.S. Dist. LEXIS 104706 (E.D. Cal. Aug. 10, 2015). This case also proves inapplicable to today's decision, as it focuses on complete preemption analysis. The Court notes, however, that the *Rose* Court found that the plaintiff's state law claims "could be brought as a breach of fiduciary duty claim under § 502," thereby meeting the test for conflict preemption. *Id.* at *18.

> Congress intended to preempt at least three categories of state laws under § 514: (1) laws that mandate employee benefit structures or their administration, (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices, and (3) laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions.

*Darcangelo*, 292 F.3d at 190 (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658–59 (1995)). Allen's defamation claim does not fall within the first category of laws, but may fall within the second category.[6] Regardless, the claim falls clearly within the third category of laws and, thus, ERISA preempts Allen's defamation claim.

ERISA preempts Allen's defamation claim because, through the defamation claim, Allen seeks an alternative enforcement mechanism to ERISA's civil enforcement provisions, namely, a remedy for Unum's fiduciary conduct during the claim review process. A state law claim "is an alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under § 502." *Darcangelo*, 292 F.3d at 191. Applicable in this case, claims "to enforce [a] defendant['s] fiduciary duties under the ERISA plan . . . would constitute alternative enforcement mechanisms to § 502 and would therefore relate to the ERISA plan [as required for conflict preemption]." *Id.* at 192.

---

[6] The *Darcangelo* Court briefly discusses this second category, concluding that Darcangelo's claim falls "entirely outside the scope of plan administration [and therefore] does not make any claim for relief that would regulate the structure or process of plan administration." 292 F.3d at 190. Nevertheless, the court seems to recognize preemption of claims that "seek relief that would dictate how a plan administrator must process benefit information, dictate who may have access to such information, or limit the ability of the plan administrator to investigate benefit claims." *Id.* Applying the *Darcangelo* Court's dicta to this case, granting relief on Allen's defamation claim would arguably fall within this description. Allen bases her defamation claim on two letters sent by Unum, one during the claim investigative process and one denying her benefit claim. Granting Allen relief could potentially "dictate how [Unum] must process benefit information" or "limit the ability of [Unum] to investigate benefit claims." This Court, however, does not base its holding on this second category of laws preempted under conflict preemption doctrine, as the third category clearly applies.

Whether a plan administrator's behavior constitutes fiduciary conduct depends on whether the behavior "was . . . undertaken [by the plan administrator] in the course of carrying out its plan responsibilities." *Id.* at 193. While some behavior falls outside the bounds of fiduciary conduct, *see, e.g., id.* at 186 (plan administrator allegedly obtained medical information solely to help plaintiff's employer fire her), "a benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan," *Davila*, 542 U.S. at 219; *see also id.* at 220 ("[The language of ERISA § 503] strongly suggests that the ultimate decisionmaker in a plan regarding an award of benefits must be a fiduciary and must be acting as a fiduciary when determining a participant's or beneficiary's claim."). By extension, claims related to the method of processing benefits implicate the plan administrator's fiduciary conduct and, thus, qualify as alternative enforcement mechanisms to § 502. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987) ("The common law causes of action raised in [the beneficiary's] complaint, each based on alleged improper processing of a claim for benefit under an employee benefit plan, undoubtedly meet the criteria for preemption under [conflict preemption doctrine].").

For example, in *Darcangelo*, the plaintiff's various state law claims did not relate to an ERISA plan because the plan administrator obtained private medical records "solely to assist [the plaintiff's employer] in establishing that [the plaintiff] posed a threat to her coworkers." 292 F.3d at 188. Thus, the Fourth Circuit held that the claims did not relate to the ERISA plan and, consequently, that ERISA did not preempt the plaintiff's state law claims. *Id.* The court held, however, that "[i]f [the plan administrator] obtained [the plaintiff's] medical information in the course of processing a benefit claim or in the course of performing *any* administrative duties under the plan, these claims would be 'related to' the ERISA plan under § 514 and would

7

therefore be preempted." *Id.* (emphasis in original); *see also Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005) (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146–147 (2d Cir. 1989)) ("What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit."). The Fifth Circuit supports this reasoning, holding a defamation claim preempted based on "an ERISA plan administrator['s] deci[sion] that the plan does not cover a particular medical treatment for a particular participant or beneficiary." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 433 (5th Cir. 2004); *see also Thomas v. Telmecanique, Inc.*, 768 F. Supp. 503, 506 (D. Md. 1991) (holding a defamation claim preempted where the alleged defamatory words by the plan administrator "were solely about the plan").[7]

As a final example, perhaps most on point with Allen's claim, in *Puccio v. Standard Ins. Co.*, the Northern District of California dismissed the plaintiff's defamation claim as preempted by ERISA. No. 12-cv-04640-JST, 2013 WL 1411155, at *5–6 (N.D. Cal. Apr. 8, 2013). The plaintiff based her defamation claim on the allegation that during the course of a doctor's evaluation completed in connection with an ERISA benefit claim, a representative of the plan administrator "told the physical therapist that [the plaintiff] was 'uncooperative with the innuendo that she was a malingerer, and with the innuendo that Plaintiff was committing the crime of insurance fraud.'" *Id.* at *1. The *Puccio* Court dismissed the defamation claim because it "relates to the plan at issue in this action . . . [, as] the alleged statements were made during an

---

[7] Allen cites *Abofreka v. Alston Tobacco Co.*, 341 S.E.2d 622 (S.C. 1986), as cited by the Supreme Court in a footnote, to support its argument that ERISA should not preempt defamation claims. *Abofreka*, however, discusses neither ERISA nor preemption, but focuses on the law of defamation in South Carolina. Accordingly, this Court focuses on more recent precedent on point in its evaluation of ERISA conflict preemption.

examination conducted as part of the plan's claim review process." *Id.* at *5. Further, the court noted that the plaintiff's state law claim suggested an intention to interfere with attainment of benefits, a claim available under ERISA's civil enforcement provisions. As such, the plaintiff's claim fell within the third category of state laws that Congress intended ERISA to preempt.

In this case, Allen bases her defamation claim on two letters, one sent to her doctor during Unum's claim evaluation process, and one sent to her attorney explaining Unum's reasons for denying her claim. Unlike the plan administrator in *Darcangelo* whose behavior did not occur "in the course of providing benefits to [the plaintiff] or performing *any* of its duties under the ERISA plan," Unum generated the two letters "in the course of processing a benefit claim." 292 F.3d at 188–89. The letter to Allen's doctor involved the investigatory stage of the benefit claim process, relating directly to Unum's decision regarding Allen's entitlement to benefits under the Plan. Similarly, the letter to Allen's lawyer reported the result of the benefit claim process, relating directly to Unum's ultimate decision. Accordingly, as the statements on which Allen's defamation claim rest occurred in the course of Unum processing her benefit claim, Allen's defamation claim "[is] 'related to' the ERISA plan under § 514 and . . . therefore . . . preempted." *Id.*

Allen argues that Unum made these defamatory statements not as part of its plan administration, but in an "effort to demean and disparage" her and, referencing the letter to her doctor, to "disparage Allen's credibility to a trusted third-party in order to influence her assessment of Allen's disabling pain symptoms." (Dk. No. 1, at ¶¶ 116, 118.) Even taking these allegations as true, as the Court must at this stage in the case, ERISA still preempts the defamation claim because Unum made the statements in the course of processing a benefits claim. Like the plaintiff in *Puccio* who suggested an intention on the part of the plan

administrator to interfere with the plaintiff's attainment of benefits, 2013 WL 1411155, at *5–6, if Allen seeks relief for Unum's alleged efforts to influence Allen's doctor, Allen should seek relief under ERISA's civil enforcement provisions. Accordingly, ERISA preempts Allen's defamation claim.

Finally, the Court briefly discusses *Dishman v. UNUM Life Insurance Co. of America*, 269 F.3d 974 (9th Cir. 2001), as both parties contend that it supports their position. Putting aside the fact that Ninth Circuit precedent does not bind this Court, the Court agrees with Unum that *Dishman* does not run afoul of today's decision. The Court fully agrees with the Fourth Circuit and the *Dishman* Court that "the simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state law liability for alleged wrongdoing against a plan participant or beneficiary." *Darcangelo*, 292 F.3d at 192. In *Dishman*, the facts present an example of extreme conduct—an investigator for Unum using impersonations and lies to gather information about a claim—that "only peripherally impact daily plan administration." *Id.* at 191 n.4 (citing *Dishman*, 269 F.3d at 984). Allen's defamation claim differs, however, because the two allegedly defamatory letters from Unum do not "only peripherally impact daily plan administration;" rather, Unum generated the letters *as part of* daily plan administration. As recognized by the *Darcangelo* Court after its citation to *Dishman*, plan administrator behavior occurring "*in the course of processing a benefit claim* . . . would . . . constitute an alternative enforcement mechanism to a breach of fiduciary duty claim under § 502," and, thus, would trigger ERISA conflict preemption. *Id.* at 193 (emphasis in original).

In summary, under ERISA, conflict preemption applies to preempt state laws that relate to an ERISA plan. Allen bases her defamation claim on two letters sent by Unum in the course of processing her benefit claim for long-term disability. As these letters—and, by extension,

Allen's defamation claim—arose in course of processing a benefit claim, Allen's claim relates to an ERISA plan and, thus, ERISA preempts it.

### III. CONCLUSION

For these reasons, the Court GRANTS Unum's motion to dismiss Allen's defamation claim.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: September 17, 2015
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

11