IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARY E. ALLEN,
          Plaintiff,

v.                                              Civil Action No. 3:15-cv-219-JAG

UNUM LIFE INSURANCE COMPANY
OF AMERICA,
          Defendant.

## OPINION

Mary Allen appeals the denial of long-term disability benefits by Unum Life Insurance Company of America ("Unum"), the plan administrator for her employee benefit plan (the "Plan"). Under the Plan, Unum decides whether applicants meet the Plan's definition of disability. Unum found that Allen could work, and therefore denied her request for benefits. Today, the Court need not decide whether Allen can in fact work; rather, the Court need only decide whether Unum abused its discretion in deciding that she could. Because Unum did not abuse its discretion, the Court grants summary judgment to Unum.

## I. BACKGROUND[1]

Allen's employer, CVS Pharmacy ("CVS"), provided long-term disability insurance for its workers. The Plan contains two different definitions of long-term disability. For the first

---

[1] In ERISA denial of benefits cases, courts typically review the plan administrator's decision based only on the administrative record, as the administrative record contains only the documents before the plan administrator at the time of the denial decision. *See Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 631 (4th Cir. 2010). To her reply in support of her motion for summary judgment, Allen attached a declaration that addressed perceived discrepancies in Unum's January 9, 2015 letter. Unum moved to strike this declaration as outside the administrative record. While the Court tends to agree with Unum, because the additional information in Allen's declaration does not affect the outcome of this case, the Court will deny the motion to strike.

twenty-four months, an employee qualifies as disabled if "[she is] **limited** from performing the **material and substantial duties** of [her] **regular occupation** due to [her] **sickness** or **injury**." (UA-POL-LTD-000019 (emphasis in original).) In contrast, after twenty-four months, the employee is disabled if she is "unable to perform the duties of any **gainful occupation** for which [she is] reasonably fitted by education, training or experience." (*Id.* (emphasis in original).) In other words, for the first two years of benefits, an employee is "disabled" if she cannot perform her regular job. After two years, an employee is disabled only if she cannot perform *any* occupation. Unum has "sole discretionary authority to construe the terms of the Plan and all facts surrounding claims" and to make benefits determinations. (*Id.* at -000042, -000047.)

### A. Allen's Medical, Work, and Benefits History

CVS employs Allen as a pharmacy technician. Her job includes assisting pharmacy customers, processing prescriptions, performing register transactions, communicating with healthcare providers, inputting data into the computer, and managing inventory. The physical activities required include "repetitive wrist-twisting motions of opening and closing prescription and stock bottles, typing, typing while talking on the phone (cradling the phone between the shoulder and neck), reaching above the head to remove bottles from shelves, and standing for extended periods of time without sitting." (UA-CL-STD(102257960)-000143.) Unum classified this occupation as requiring a light level of physical exertion.

In March 2010, Allen suffered multiple injuries in a car accident, including neck, back, arm, and leg injuries, primarily on the left side of her body. After the accident, Unum paid Allen short-term disability benefits through August 2010. During this time, Allen visited several doctors and tried various avenues for pain management, including physical therapy and chiropractic care. In July 2010, she returned to working half shifts for ten to fifteen hours per

week, with a limitation from performing "anything in [her] job description that could exacerbate or potentially reinjure [her]." (*Id.* at -000242.) In September 2010, Allen returned to work full-time with the same limitation against doing anything that could exacerbate her injuries.

While working full-time, Allen continued visiting various doctors and showed some improvement, but her pain persisted. In February 2012, Allen underwent spinal surgery, which fused two vertebrae in her neck. After the surgery, Unum paid short-term disability benefits through July 2012. While the surgery seemed to improve the pain in Allen's neck and arm, the pain in Allen's back and leg persisted. Allen and her physicians continued exploring techniques to manage the pain, including epidural injections and aquatic therapy, in addition to chiropractic care.

In June 2012, Allen returned to work part-time with the following physical restrictions and limitations: no lifting of 10 lbs. above the waist; no cradling phone; no twisting or bending; no staying in one position for greater than one hour; and no work greater than four hours, three times per week. (UA-CL-LTD(103033506)-000504.) CVS accommodated Allen's restrictions by providing assistance pulling the drive-through window open and opening certain bottles, (*id.* at -000862), but would not provide a rubber mat to alleviate pain caused by the concrete floors, (*id.* at -001393). At times during her part-time work shifts, Allen would have to take breaks for up to an hour to ease muscle spasms. (*Id.* at -001858.)

After using up her short-term benefits, Allen applied for long-term disability benefits. Unum approved these benefits under the "regular occupation" standard, beginning July 2012. Allen continued to work part-time, but still experienced pain and, at some point, began having headaches. Allen reported to her physician that the headaches occur "after 1-2 hours of walking on concrete in the pharmacy. They will also occur if she is at work and has to sit for 1 1/2 hours

3

consecutively. She has observed that while sitting, if she can change position every 30-45 minutes she can prevent the headaches." (UA-CL-LTD(103033506)-000975.) While working part-time, Allen continued to see various doctors, and Unum intermittently evaluated her claim for benefits.

### B. *"Any Gainful Occupation" Claim Review*

In March 2014, Unum notified Allen that it would evaluate her claim for continuing long-term disability benefits under the "any gainful occupation" standard beginning July 2014. As part of its review, Unum contacted Allen's physicians for their opinions on Allen's capacity to work full-time in a sedentary occupation. Allen's primary care physician, her chiropractor, and her neurologist all agreed that Allen could not work full-time in a sedentary occupation. Unum retained an internist and a neurologist to review Allen's medical records and other documents in the claim file. Both agreed that Allen could perform a mostly sedentary occupation on a full-time basis.

In August 2014, Unum discontinued Allen's benefits. To justify its decision, Unum cited Allen's improvements with headache patterns, Unum's physicians' reviews of Allen's medical records, and Allen's ability to work part-time at CVS.

Allen appealed the termination decision. In her appeal, she provided additional medical records and a statement from a co-worker. In October 2014, Unum outlined certain issues to address on appeal, primarily, "whether the evidence supports sustained [full-time] capacity to perform the alternative sedentary occupations." (*Id.* at -001843). Unum's report said that "[t]his appears to be a chronic pain claim . . . [and] while [reported pain] may be in excess of exam/diagnostic findings, [it] must be considered." (*Id.*) Unum's note concludes: "Specifically,

4

we need to address whether there is evidence and/or inconsistencies in the file that refutes[2] the severe symptoms and the restriction to part time work capacity." (*Id.*) Unum then had another physician—a neurosurgeon—review Allen's medical records and other documents in the claim file. He concluded that Allen could sustain a full-time sedentary occupation.

On December 11, 2014, Unum denied Allen's appeal. The denial letter recounted the initial decision, as well as the review by and conclusion of its neurosurgeon during the appeal. The letter also listed information "inconsistent with the severe symptoms and the degree of physical difficulties and/or limitations that [Allen] describes." (*Id.* at -001919.) This list included: (1) that the "restrictions and limitations provided appear to rely solely on what [Allen] tells her providers about her symptoms and physical difficulties," but "the degree of difficulties and/or limitations . . . report[ed] are not explained by and is in excess with the available exams and diagnostic findings;" (2) that Allen reported falls, but did not seek treatment for them; (3) that Allen "is consistently observed to be in no acute distress during physical exams;" (4) that Allen does not use a cane or other assistance device, despite reporting falls; (5) that Allen continues to drive; (6) that Allen continues to work part-time at a light level of exertion; and (7) that Allen performs light household chores, including walking her dog. The letter also noted Allen's right to sue under ERISA.

In late December, Allen asked Unum to reopen her appeal, providing additional medical records from another doctor who completed a neuropsychological evaluation. Not surprisingly, Allen's physician endorsed her disability status. Unum then had another physician review

---

[2] Unum's documents contain many instances of using singular verb forms with plural subjects. *E.g.* "evidence and/or inconsistencies . . . refutes. . . ." This may be something required by ERISA regulations. Given Unum's frequent use of the term "and/or," it may even be grammatically correct. Accordingly, the Court will not change Unum's less than euphonious idiolect.

5

Allen's medical records and claim file from a psychological perspective. Not surprisingly, Unum's doctor did not support disability. On January 9, 2015, Unum notified Allen that the newly submitted documents "do[] not change [its] prior appeal decision." (*Id.* at -001969.) This letter noted that Unum's "December 11, 2014 letter explained the basis for [its] determination that [Allen] is capable of performing the duties of alternative gainful, sedentary occupations." (*Id.*) In addition, Unum listed more "information and inconsistencies [that] support [its] determination." (*Id.* at -001970.) This list generally honed in on inconsistencies between Allen's reports to her physicians and her actions. For example, Unum compared Allen's reports of pain with her actions of driving and completing household chores. Notably, this list said that Allen's Facebook profile revealed plans of going on a cruise.[3] Unum's January 9, 2015 letter concluded, "the additional information does not change [Unum's] prior decision. This letter, and [the] December 11, 2014 letter, serves as [Unum's] collective and final determination." (*Id.* at -001975.)

## C. Pending Litigation

Allen has now asked the Court to overturn Unum's decision or, in the alternative, to remand to Unum for a full and fair review of her benefits claim. The parties have filed cross-motions for summary judgment. In her reply in support of her motion for summary judgment, Allen attached a declaration that offered additional facts in response to Unum's January 9, 2015 letter. Many of the additional facts amount to squabbles over word choices (e.g., whether Allen told Unum that she had a dog or a therapy dog), but, as Unum admits, show that Unum had found and referred to the Facebook profile of a different Mary Allen in the January 9, 2015 letter.

---

[3] This attempt to gild the lily blew up in Unum's face and shows the perils of relying on anything on social media. The woman getting ready for the cruise was a different Mary Allen.

6

## II. <u>STANDARD OF REVIEW</u>[4]

ERISA allows a plan participant to challenge a plan administrator's decision to deny benefits in federal court. 29 U.S.C. § 1132(a)(1)(B); *see Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Reviewing courts apply an abuse of discretion standard when the ERISA plan at issue vests the plan administrator with the discretionary authority to make eligibility determinations.[5] *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010). Under this standard, courts should "not disturb a plan administrator's decision if the decision [was] reasonable, even if [the court] would have come to a contrary conclusion independently." *Id.* at 630. "To be held reasonable, the administrator's decision must result from a 'deliberate, principled reasoning process' and be supported by substantial evidence." *Id.* (citations omitted).

Courts should consider a list of eight non-exclusive factors in reviewing the administrator's decisions under ERISA:

> (1) the language of the plan;
> (2) the purposes and goals of the plan;
> (3) the adequacy of the materials considered to make the decision and the degree to which they support it;
> (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan;
> (5) whether the decisionmaking process was reasoned and principled;
> (6) whether the decision was consistent with the procedural and substantive requirements of ERISA;
> (7) any external standard relevant to the exercise of discretion; and
> (8) the fiduciary's motives and any conflict of interest it may have.

---

[4] This case is currently before the Court on cross motions for summary judgment. In ERISA cases challenging denial of benefits decisions, however, "summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment do not apply." *Keith v. Fed. Express Corp. Long Term Disability Plan*, No. 7:09cv00389, 2010 WL 1524373, at *4 n.4 (W.D. Va. Apr. 15, 2010) (citation, internal alterations, and quotation marks omitted).

[5] *The parties do not dispute that the abuse of discretion standard applies in this case.*

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000); *see also Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, (4th Cir. 2008) ("[C]ourts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by that administrator, even if the administrator operated under a conflict of interest.").

### III. DISCUSSION

Unum came to a reasonable decision after a principled decision-making process. Unum received the opinions of Allen's treating physicians, had two physicians render opinions after reviewing Allen's full medical records, and evaluated other information gleaned from its interactions with Allen. Based on this information, Unum denied Allen benefits because it found that she could perform a full-time sedentary occupation. Unum then denied both of Allen's appeals after reviewing the new evidence submitted and after two more consulting physicians agreed that Allen could perform a full-time sedentary occupation. While Unum made some mistakes with its denial of Allen's second appeal—namely, the Facebook profile mix-up—these mistakes do not negate the full and fair review Allen received before the second appeal, *see infra* Part III.B, and, in any event, are harmless. Accordingly, although the Court may have reached a contrary conclusion independently, Unum did not abuse its discretion in denying Allen's claim for long-term disability benefits.

#### *A. Allen's Arguments for Abuse of Discretion Do Not Persuade the Court*

Allen makes three main arguments: (1) Unum had a conflict of interest that tainted the decision; (2) Unum wrongly relied on its consulting physicians over Allen's treating physicians; and (3) Unum wrongly relied on the idea that the ability to work part-time at a light level of exertion suggested the ability to work full-time in a sedentary capacity.

The alleged conflict of interest arises because Unum not only administers claims under the Plan, but pays them as well. Allen argues that this conflict of interest "shaped its conduct, as . . . it treated Allen as an adversary, not a neutral claimant."[6] (Pl.'s Mem. Supp. Mot. Summ. J. 30.) A conflict, however, is "but one factor among the many identified in *Booth*" to determine whether a plan administrator acted reasonably. *Williams*, 609 F.3d at 631. Nothing in the record suggests inherent bias based on Unum's conflict of interest; after all, Unum paid Allen the maximum amount of short-term disability and paid long-term disability benefits for two years. *See, e.g., id.* at 632 ("The district court correctly concluded that [the plan administrator]'s initial finding of disability, its payment of long-term disability benefits for almost two years, and its referral of its termination decision to two independent physicians, suggests that [the plan administrator] was not inherently biased in making its decision."). Allen chastises Unum because it "reversed course" in denying Allen benefits, "even though nothing about Allen's medical condition had changed." (Pl.'s Mem. Supp. Mot. Summ. J. 1 (emphasis omitted).) Allen misses the point, however, because while Allen's medical condition may not have changed, the definition of disability under the Plan did change. The application of a more demanding standard, as required by the Plan, simply does not amount to a conflict creating an abuse of discretion.

Allen also argues that Unum abused its discretion in relying on the opinions of its consulting physicians—who all thought she could work full-time in a sedentary capacity—over

---

[6] To support this argument, Allen also cites a notation in the claim file where Unum reviewed issues to address during Allen's appeal—dubbed by Allen the "Roundtable Review." Allen seems to take this notation out of context, construing the notation as pre-determination and "marching orders" to deny Allen's claim. Read naturally, Unum noted its need to review Allen's credibility because her claim relied so heavily on subjective evidence. Based on the nature of Allen's claim, this review does not raise the specter of inherent bias amounting to an abuse of discretion.

Allen's treating physicians—who all disagreed. Neither the Plan nor ERISA prohibits plan administrators from seeking medical opinions from consulting physicians based on a review of the claimant's medical file.[7] *See, e.g., Spry v. Eaton Corp. Long Term Disability Plan*, 326 F. App'x 674, 679 (4th Cir. 2009). Indeed, as the Supreme Court noted, plan administrators need not automatically give special weight to treating physicians:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Accordingly, Unum did not abuse its discretion in relying on the opinion of its consulting physicians over Allen's treating physicians.

Allen next criticizes Unum's conclusion that the ability to work part-time at a light level of exertion equates to the ability to do sedentary work full-time, arguing "that this kind of logic is false equivalence." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 23.) In support of this argument, Allen cites a case which "noted that the ability to do sedentary work for short periods of time does not establish the ability to perform full-time, consistent work." *Cherry v. Digital Equip. Corp.*, No. CIVS05-2165 WBS JFM, 2006 WL 2594465, at *8 (E.D. Cal. Sept. 11, 2006). While the Court agrees with Allen to the extent that sedentary work does not necessarily beget

---

[7] Courts have disregarded the opinions of consulting physicians where that physician did not review the claimant's medical records or where the opinion plainly conflicted with the medical records. *See, e.g., Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir. 2007). Here, however, Allen does not dispute what information Unum's consulting physicians reviewed, only what the information meant. (*See, e.g.*, Pl.'s Opp'n to Def.'s Mot. Summ. J. 18–19 ("Dr. Sternbergh's report improperly analyzed the objective medical studies . . . .").)

10

more sedentary work, light-level-exertion work and sedentary work differ. While CVS did accommodate Allen to an extent, the record reflects that she did more than sedentary work during her shifts. In fact, Allen reported that CVS would not provide a rubber mat to alleviate the pain associated with standing on a concrete floor. Thus, Unum did not abuse its discretion in translating Allen's ability to work part-time in her position at CVS into evidence of an ability to work full-time in a sedentary occupation as a factor in its decision to deny Allen benefits.

Whether viewed individually or collectively, Allen's criticisms of Unum's decision simply do not establish an abuse of discretion.

### B. The Court Need Not Remand for Mistakes Made During Allen's Second Appeal

Alternatively, Allen asserts that, at the very least, the Court should remand the case to cure Unum's use of the wrong Facebook profile and other mistakes made during Allen's second appeal in the January 9, 2015 denial letter. In ERISA denial-of-benefits cases, remand is appropriate "[i]n cases where there is a procedural ERISA violation . . . so that a 'full and fair review' can be accomplished." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008). The procedures required of a plan administrator by ERISA include: (1) adequate notice "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and (2) "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133; *see also* 29 C.F.R. § 2560.503-1.

As an initial matter, ERISA's procedural requirements do not cover second, voluntary appeals. *See DaCosta v. Prudential Ins. Co. of Am.*, No. 10-cv-720 (JS)(ARL), 2010 WL 4722393, at *5–6 (E.D.N.Y. Nov. 12, 2010) (noting that ERISA requires only a single review, that regulations provide no substantive guidelines for conducting voluntary appeals despite

11

covering other aspects of voluntary appeals, and that public policy dictates against imposing the procedural requirements on voluntary appeals); *see also Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8th Cir. 2014). This alone counsels against remand in this case, as the only perceivable procedural violation alleged occurred during Unum's second, voluntary review of Allen's claim. The mistakes made during the voluntary review do not negate the full and fair review Allen received during her first appeal.

Even if the Court considers Unum's mistakes during the second, voluntary review, the mistakes do not rise to the level of a procedural violation justifying remand. Unum's mistakes—namely, relying on the wrong Facebook profile and arguably misconstruing facts from the record—did not go to the core of Allen's claim, such as in cases where the plan administrator relied on definitions from the wrong insurance policy, *Touhey v. Hartford Life & Accident Ins. Co.*, No. 4:10CV1440 JCH, 2012 WL 2568185, at *4 (E.D. Mo. July 3, 2012), or medical records for the wrong patient, *Watson v. UnumProvident Corp.*, 185 F. Supp. 2d 579 (D. Md. 2002) (granting summary judgment to the plaintiff in lieu of remand based on the unreasonable and unprincipled deliberative process). Further, Unum's mistakes did not lead to denial of Allen's benefits on a new basis. *Gagliano*, 547 F.3d at 236, 240 (remanding where a plan administrator denied an appeal for a completely different reason than the initial denial reason, resulting in a procedural violation for lack of adequate notice); *see also Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 436 (D.C. Cir. 2011) ("The results of the additional tests and reviews did not provide a new basis for terminating [the claimant]'s benefits, but merely supplemented [the plan administrator's] initial reasoning."). Instead, in its January 9, 2015 letter, Unum confirmed that the December 11, 2014 letter explained the basis for the claim

denial, and that the new information did not change the prior appeal decision.[8] Accordingly, Unum's mistakes during Allen's second, voluntary appeal do not justify remand.

## IV. CONCLUSION

For these reasons, the Court GRANTS Unum's motion for summary judgment and DENIES Allen's motion for summary judgment.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: __Sept. 1__, 2016
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[8] Indeed, remand likely would not change Unum's benefits decision, as it denied Allen's claim and appeal prior to its mistakes during the second appeal, and without delving into Allen's inconsistent statements.

13